NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMILMARY MALDONADO, o/b/o FELISHA M. RIVERA<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | CIVIL NO. 06-3041(NLH)<br><br>**OPINION** |

**APPEARANCES:**

Jason L. Thompson, Esquire
Leventhal, Sutton and Gornstein
Horizon Corporate Center
3600 Horizon Boulevard, Suite 150
Trevose, PA 19053

　　　Attorney for Plaintiff

Christopher J. Christie
United States Attorney
　　By:  Karla J. Gwinn, Esquire
　　　　 Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

　　　Attorney for Defendant

**HILLMAN**, District Judge

　　　This matter comes before the Court pursuant to Section 405(g) of the Social Security Act to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Supplemental Security Income

Benefits ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. § 1381, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time prior to the ALJ's decision on October 20, 2005. For the reasons stated below, this Court will affirm that decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, the applicant's minor daughter,[1] was born approximately two and one-half months premature on August 7, 1998. She has suffered from various health problems since birth, including asthma.

An application for SSI was first filed on behalf of Plaintiff on March 17, 1999. That application was denied on September 29, 1999. Plaintiff's second application was filed on May 9, 2002. That application was denied on March 10, 2003, and the decision was not appealed. A third application for SSI was filed on June 5, 2003. This application was denied on September 24, 2003, and Plaintiff timely requested reconsideration thereafter. On reconsideration, Plaintiff's application was again denied on November 21, 2003.

Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ") on December 12, 2003. The

---

[1] This Court notes that Plaintiff chose to reveal the full name of her minor child in public documents filed with the court.

2

hearing was held on August 18, 2005. Subsequently, the ALJ issued a decision on October 20, 2005, denying Plaintiff's application for SSI. The Appeals Council denied Plaintiff's request for review on May 4, 2006. Plaintiff then appealed to this Court for a review of the final decision of the Commissioner.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Social Security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen,

3

845 F.2d 1211, 1213 (3d Cir. 1988).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Commissioner, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). In terms of judicial review, a district

court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Supplemental Security Income Benefits**

For a child to be considered "disabled" and eligible for Social Security Income Benefits ("SSI") under the Social Security Act, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner applies a three-part sequential analysis to evaluate whether a child is disabled and eligible for SSI, summarized as follows:

1.    Whether the child has ever engaged in substantial gainful activity;[2]

---

[2] It is the rare case that a "child," i.e., a person under the age of eighteen, will have ever been employed or engaged in "substantial gainful activity."  Instead, the "child" is most

    2.    Whether the child's impairment is, or combination of impairments are, "severe"; and

    3.    If the child is found to have a "severe" impairment, whether that impairment "meets, medically equals, or functionally equals" a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If a child's impairment does meet or equal a listed impairment, the Commissioner will determine that the child is disabled.

20 C.F.R. § 416.924(a)-(d).

    For a "severe" impairment to "medically equal" one listed in the Regulations, its characteristics must be equivalent to the explicit text of the listing.  An impairment "functionally equals" a listed impairment if the child has "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926(a).  See also Cosby v. Commissioner, No. 06-3157, 2007 WL 1258527, at *5 (3d Cir. May 1, 2007).  The six domains are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

    Furthermore, a "marked" limitation is one that "seriously"

---

likely either attending school or too young to attend school.
Thus, procession to step two of this sequential analysis is a
regular exercise in SSI cases.

interferes with a claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). By contrast, an "extreme" limitation is one that "very seriously" interferes with a claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

### C. Analysis

The ALJ determined that Plaintiff had not been under a "disability" at any time up to the date of his decision on October 20, 2005. At step one of the three-part sequential analysis, the ALJ found that Plaintiff had never engaged in substantial gainful activity. At step two of the analysis, the ALJ found that Plaintiff suffered from asthma, adjustment disorder and obesity, and each constituted a "severe" impairment. However, at step three the ALJ found that none of Plaintiff's "severe" impairments met or equaled, either medically or functionally, the severity of the relevant impairments listed in the Regulations.

Plaintiff appeals the ALJ's decision on two grounds. First, Plaintiff argues that her asthma impairment meets or medically equals the severity requirement of a listed impairment under Section 103.03C: Asthma. Second, Plaintiff argues that her asthma impairment medically equals, and in the alternative functionally equals, the severity requirement of a listed impairment under Section 103.03B: Asthma Attacks. For the

7

reasons discussed below, this Court finds that each argument is without merit, and thus the decision of the ALJ must be affirmed.

> **1. Whether substantial evidence establishes that Plaintiff's "severe" asthma impairment meets or equals the severity requirements of Section 103.03C.**

Plaintiff argues that her asthma-related symptoms meet the severity criteria listed in the Regulations, and that the ALJ's failure to explicitly consider Section 103.03C "is reversible error."  Pl. Br. at 11.  In terms of the latter argument, Plaintiff's reliance on Burnett v. Commissioner, 220 F.3d 112 (3d Cir. 2000), for that proposition is misplaced.  The Government correctly directs attention to the Third Circuit's decision in Jones v. Barnhart, 363 F.3d 501 (3d Cir. 2004), on this point. Jones explained that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis," so long as the administrative record is sufficiently developed enough to provide meaningful review.  Id.

In his decision, the ALJ stated that he "carefully considered the impairments listed in Section 103.00 - Respiratory system."  (R. at 22.)  Section 103.00 includes both asthma generally (103.03C) and asthma attacks (103.03B).  The ALJ's thorough analysis of 103.03B, discussed more fully below, indicates that the relevant characteristics of 103.03C were not only considered, but properly rejected as grounds for establishing medical equivalence.  As a result, this Court is

satisfied that the ALJ's decision to not identify 103.03C as a listing comparable to Plaintiff's asthmatic symptoms is supported by substantial evidence.

To qualify as disabled based on Section 103.03C, the burden was on Plaintiff to show that she suffered from the following:

> Persistent low grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimectic bronchodilators with one of the following:
> (1) Persistent prolonged expiration with radiographic or other appropriate imaging techniques, evidence of pulmonary hyperinflation or peribronchial disease; or
> (2) short courses of corticosteroids that average more than five days per month for at least three months during a twelve month period.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03C.

The ALJ did not find, nor has Plaintiff directed our attention to, any evidence of either: 1) "persistent low grade wheezing between acute attacks," or, 2) an "absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimectic bronchodilators." Although Plaintiff may have been on a consistent regimen of corticosteroid, that evidence is only relevant if either of the aforementioned criteria are first met. "For a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521,

9

530 (1990) (emphasis in original).

Thus, Plaintiff would not only have to present evidence of regular corticosteroid or sympathomimectic bronchodilator use, but also evidence that Plaintiff did not enjoy any "extended symptom-free periods." This is simply not the case, and the Government is able to cite several examples in the record that undermine Plaintiff's argument. See R. at 263-64, 268-69, 274-75, 286, 288, 297-98, 337, 339-341 and 398-400.[3] Therefore, Plaintiff cannot make a showing that her impairment medically meets or equals Section 103.03C in the Regulations, and the ALJ's finding in the alternative is supported by substantial evidence.

2. **Whether substantial evidence establishes that Plaintiff's "severe" asthma impairment meets or equals, either medically or functionally, the severity requirements of Section 103.03B.**

Plaintiff argues that her asthma impairment meets the severity requirement of Section 103.03B in the Regulations' listing of impairments. Pl. Br. at 12. In the alternative, Plaintiff argues that her asthma impairment is the functional equivalent of that listing. Id. at 14. This Court does not agree with either proposition, and each will be discussed in

---

[3] Among the examples in the record of controlled asthma and/or extended symptom-free periods are the following: an Underwood-Memorial Hospital triage assessment on October 18, 2002, indicating normal breathing, a clear airway and no wheezing, and subsequent triage assessments on February 7, 2003, March 3, 2003, June 26, 2003, June 28, 2003 and July 14, 2003, indicating the same.

10

turn.

### a. Medical Equivalence

For Plaintiff's asthma to medically equal the severity requirement of Section 103.03B, she would have to show that she suffered from asthma "[a]ttacks (as defined in 3.00C),[4] in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B ("[A]n evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.").  Additionally, "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks."  Id.

Here, the ALJ found that "[Plaintiff]'s asthma does not approach listing-level severity, as the record reflects only two hospitalizations (one each in 2002 and 2003)(Exhibits 4F, 14F, 23F), and only five or fewer emergency room or doctor visits during any twelve month period."  R. at 22.  Conversely, Plaintiff argues that she suffered eight qualifying "attacks"

---

[4] The Regulations define asthma "attacks" as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.00C.

11

between April 26, 2002 and April 25, 2003.[5]  Pl. Br. at 12-13.

There is no dispute that on and around April 26, 2002, Plaintiff suffered an asthma "attack" of listing-level severity, and that the duration of that hospitalization would qualify it as two separate attacks for medical equivalency purposes.  See Pl. Br. at 12; Gov. Br. at 6.  The ALJ's written opinion is consistent with that assertion as well.  R. at 22.  Similarly, Plaintiff and the Government both agree that Plaintiff suffered from asthma attacks of listing-level severity on or around September 14, 2002 and December 11, 2002.  See Pl. Br. at 12-13; Gov. Br. at 7.  Thus, a total of four attacks are agreed upon by the parties, two shy of the requisite amount for medical equivalence under the Regulations.

Plaintiff alleges that she suffered four additional attacks on October 18, 2002, February 10, 2003 (a hospitalization alleged counting as two "attacks"), and March 25, 2003.  However, the record reveals that neither the October 18 or March 25 "attacks" meet the severity requirement in the Regulations, and that, at most, the February 10 episode counts as one attack and not two.  The October 18, 2002, hospital report does not indicate

---

[5] Plaintiff actually asserts that she suffered from nine qualifying attacks in a roughly fifteen and one half-month time period (April 26, 2002 through July 9, 2003).  Because the measure is attacks per twelve-month period, this Court will analyze the twelve-month time period containing the most alleged attacks, from April 26, 2002, until April 25, 2003.

12

persistent symptoms leading up to Plaintiff's admittance.  R. at 296-303.  Further, the report establishes that, aside from some vomiting, Plaintiff's respiratory functions were stable and within normal ranges.  <u>Id.</u>  The March 25, 2003, visit to Cooper Hospital likewise did not meet the durational requirement of the Regulations' definition of an asthma attack.[6]  R. at 257.  Furthermore, Plaintiff's hospitalization on February 10, 2003, counts at most as one attack, not two, because Plaintiff was not admitted for longer than 24 hours.[7]  As such, Plaintiff at maximum suffered a total of five asthma attacks in the relevant time period: the four agreed upon and an additional attack on February 10, 2003.

Therefore, the ALJ's finding that Plaintiff did not suffer the requisite amount of six asthma attacks in a twelve-month consecutive period, and consequently does not have asthma attacks that medically meet or equal the listing in Section 103.03B of

---

[6] The attending physician noted that Plaintiff was merely at the "[b]eginning of asthma exacerbation."  R. at 257.

[7] Plaintiff essentially argues that because she was admitted and discharged on two different calendar days, the in-patient hospitalization between February 10 and 11 in 2003 counted as two attacks.  <u>See</u> Pl. Br. at 13.  However, the Regulations explicitly state that "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B.  There is nothing in the record to suggest that Plaintiff spent more than twenty-four hours in the emergency room after being admitted to Underwood Memorial Hospital at 10:45pm on February 10 and discharged on February 11, 2003.  <u>See</u> R. at 283.

13

the Regulations, is supported by substantial evidence.

### b. Functional Equivalence

For Plaintiff's asthma to functionally equal the severity requirement of Section 103.03B, she would have to show that she has "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926(a). The ALJ found that Plaintiff did not have "extreme" or "marked" limitations in any of the six domains of functioning. R. at 30. Specifically, the ALJ found that Plaintiff had "no" limitations in the "acquiring and using information" domain of functioning, "no" limitations in the "attending and completing tasks" domain, "less than marked" limitations in the "interacting and relating with others" domain, "less than marked" limitations in the "moving about and manipulating objects" domain, "no" limitations in the "caring for yourself" domain and "less than marked" limitations in the "health and physical well-being." domain.[8] R. at 28-30.

Plaintiff restricts her argument on this issue to the sixth domain: "health and physical well-being." Plaintiff argues that she "has suffered illness and exacerbations over the period of three years that have averaged more than 6 times per year," and

---

[8] There are four different ranges for domain functioning, which are, in ascending order of severity, the following: "no" evidence of functional limitations, "less than marked" evidence of functional limitations, "marked" evidence of functional limitations and "extreme" evidence of functional limitations.

14

that "[b]y virtue of th[at] frequency" she has an "extreme" limitation in the last domain.  Pl. Br. at 15.  Plaintiff further asserts that the aforementioned frequency of illness is "more than twice as frequent as would be required for [her] to have a 'marked' limitation in 'Health and Physical Well-Being.'"  Id.  Notably, the Regulations define "frequent" as "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, *each lasting 2 weeks or more*."  20 C.F.R. § 416.926a(e)(2)(iv) (emphasis added).

Although Plaintiff alleges illness or exacerbations more than three times a year, there is no evidence showing that Plaintiff experienced asthma attacks or exacerbation of her illness for a single duration of at least two weeks, let alone the *three* as required by the Regulations.  See id.  Moreover, Plaintiff has failed to suggest how her alleged six or more "episodes of illness or exacerbations" are comparable in severity to three such episodes of two weeks duration, as is required by the Regulations.  Id.  Therefore, the ALJ's finding that Plaintiff's asthma does not functionally meet the requisite severity of Section 103.03B in the Regulations' listing of impairments must be affirmed.

### III. CONCLUSION

For the reasons expressed above, the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


                                                      s/Noel L. Hillman  
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.  
Date: September 14, 2007